ANTONIA RODRÍGUEZ, Representing her minor Children JULIO and JOSÉ ANTONIO LUGO, Plaintiff and Appellant, *v.* WORKMEN'S RELIEF COMMISSION, Defendant and Appellee.

No. 3933. Argued November 4, 1926. Decided December 7, 1926.

*Arjona & Arjona* for the appellant. *Attorney General George C. Butte, C. Llauger Díaz,* and *Emilio Aldrey* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

Eleuterio Lugo suffered a hemorrhage while working occupationally in a bakery, and died a few moments thereafter. His acknowledged natural children Julio and José Antonio Lugo, represented by their mother, Antonia Rodríguez, applied to the Workmen's Relief Commission for compensation for the death of their father.

The Workmen's Relief Commission dismissed the claim on the ground that the facts of the case did not show an occupational disease. Then the petitioner filed in the court below a complaint which the court dismissed, thus sustaining the decision of the Commission.

In her brief the appellant assigns five errors which may be reduced to two; that is, that the court below erred in holding that the hemorrhage causing the death of Eleuterio Lugo was brought about only by chronic pulmonary tuberculosis, and in finding that the hemorrhage causing the death of the workman was not an accident within the meaning of the Workmen's Accident Compensation Act.

We shall examine the two assignments together.

Dr. Gabriel Rigau attended Eleuterio Lugo shortly after he had the hemorrhage and a part of his testimony reads as follows:

"I found an intense hemorrhage in the left pleural cavity and the lung had a large cavity in its upper region toward the apex and all that region was covered with blood. Q.—What is it that you saw on the left side? A.—The left side of the pleura was somewhat inflamed in a chronic condition and had some fibrous tissue extending towards the aorta, that large artery near the lung. Judge: What was it you said after the internal hemorrhage? I found a cavity in the lung in its upper region, a chronic inflammation of the pleura, and some fibrous tissue towards the aorta; I did not find any other injury, I confined my examination to the lung and that is what I found, and my diagnosis was death due to an internal

hemorrhage and that the injury was the result of chronic pulmonary consumption—this was my pathological diagnosis. Q.—Was death caused by the hemorrhage? A.—Yes, and that cavity in the lung, that lesion in the lung was probably chronic consumption. Plaintiff: Q.—Probably? A.—Yes. Q.—Was it possible also that it was not a case of chronic consumption, that is to say, was the contrary possible? A.—It might be an abscess of another kind; it might be a septic abscess or cavity. (Defendant) Q.—Then your professional conclusion is that death was due to an internal hemorrhage caused by chronic consumption? A.—Yes.''

Appellant alleges that the doctor's statements are at variance with the conclusion reached by the court below that Eleuterio Lugo's death was entirely due to chronic pulmonary consumption. We agree, of course, that the doctor's diagnosis was not categorical as to the cause of the large cavity which he found in one lobe of the lungs of the deceased workman; but if we do not lose sight of the fact that it is admitted in the complaint that lately Lugo's ''health had been feeble'' and that other witnesses testified that a short time before his death Lugo was not working regularly but occasionally in order to rest, it is reasonable to believe from an examination of the evidence that the court below could have reached the conclusion that Lugo was suffering from chronic pulmonary consumption from which he died, the hemorrhage being one of its symptoms.

To consider the hemorrhage itself as the accident which caused the death because of the extra physical efforts made by the workman in his work, is to take the effect for the cause. And to consider that as something unforseen in order to call it an accident is a proposition that can not be sustained. The existence of an injury so extensive as that shown by the *post mortem* examination in Lugo's left lung carries the logical presumption that the illness was of long standing, and it could not be otherwise since the appellant in her complaint acknowledged that the workman's health had been poor. Likewise, the appellant's argument that ''if the hemorrhage

had been fatal and if the inevitable course of the disease affecting Eleuterio Lugo had to end necessarily in a hemorrhage causing his death, that deadly hemorrhage which we might call fatal would have happened sooner or later, but never at the moment it occurred. . . ." is not worthy of consideration. Even unprofessional people know that hemorrhages sometimes occur in cases of incipient consumption at a time when the physical signs of that fateful disease are not yet apparent, or the hemorrhages may be suffered in the course of the disease once or several times; they may even happen while at rest, and with the best of care, caused by the disease itself without any external stimulant. Therefore, both the argument of the appellant's counsel, as well as the cases cited therein, are rather opposed to his contention when he refers to the fortuitous nature of every accident. In this respect appellant's counsel expresses himself as follows on page 17 of his brief:

" 'Fortuitous' is defined as 'occurring by chance as opposed to design; coming or taking place without any cause', accidental; casual; and a fortuitous cause is said to be a contingent or accidental cause.

"The English cases make no distinction between an accident and a fortuitous event as used in some acts; for it is said in the case last mentioned, in answering the contention there made, that an injury to be within the British law must be caused by some fortuitous and external event, that the word 'accident' is a popular word of very wide meaning. Originally a grammarian's word, it has been used from Dr. Johnson's time until today to mean 'that which happens unforeseen, casualty, chance'. For four years this man had successfully used these muscles to lift this weight. Owing perhaps to carelessness, perhaps to a slip, perhaps to some other cause, except disease, he snaps the fibers of the muscles that had always successfully done the work, and if any ordinary person had been asked what had happened to him, he would have said that the man had had an 'accident', and I think the word would have been rightfully used. To me it is the same as if he had been using a rope strong enough for the purpose, and by overstrain or sudden jerk the rope had snapped and the beam had fallen on him. That

would be an accident. In one case the work is done by a rope; in the other, by a set of muscles. In each case the machinery is normally fit for the work, but the unexpected happens, the rope or muscle snaps and there is an accident. To my thinking there is in the word 'accident' always an element of injury. As to the word 'fortuitous' I do not think I need trouble myself much about it. If the injury were caused by disease, it is clear that the applicant could not recover, but I find, as a fact, that the man was not in any way diseased. Indeed, it was not seriously contended that he was. 'Fortuitous' means 'accidental', 'casual', 'happening by chance'; and I have already said that, in my opinion, this injury was caused by an accidental and fortuitous event. In determining whether the injury has been caused by an accident or not, one must discriminate between that which must occur and that which need not necessarily occur in the course of the employment. If the thing must happen, it is not an accident; but if it need not happen, then there is the fortuitous element, and there is an accident.'' 1 Honnold on Workmen Comp., 286–287–288.

From an examination of the authorities it is to be noticed that there is a conflict in the decisions as regards the diseases that up to the present have been considered as occupational accidents. The jurisprudence in that respect is thus summed up in 28 R.C.L. 794:

''While the opinions in the reported cases more often justify the decision reached, by a reference to the expression 'arising out and in the course of' the employment, a very considerable number of decisions are rested on the meaning of the term 'injury', 'personal injury', or 'personal injury by accident'. According to the prevailing view, it is not essential that the disorder be of such a character as to present external or visible signs of its existence. And while some courts hold that the statute does not authorize the payment of compensation where incapacity results from disease, such as pneumonia, rheumatism, typhoid fever, it has been held in a majority of jurisdictions that the phraseology of the compensation act is broad enough to include all nonoccupational diseases such as pneumonia, typhoid fever, rheumatism, anthrax, or optic neuritis causing loss of eyesight. But diseases that are termed 'occupational' have generally been held not to be a foundation for compensation, in the absence of express statutory provision. Accordingly, there can be no award for enteritis, eczema, plumbism, or lead poisoning, neurosis

arising from pressure on the brachial plexus, or a general breakdown as a result of overwork. Such disorders are declared not to be within the meaning of the terms 'injury' or 'personal injury'. In some instances, however, the statutes in terms have been extended to include industrial or occupational diseases. While there are cases to the contrary, it has very generally been held that a strain or rupture resulting from overexertion is an injury for which compensation should be allowed. Accordingly, compensation has been awarded in case of cerebral hemorrhage and nervous shock. The term 'personal injury' is held to include hernia produced by overexertion."

Notwithstanding the different constructions of the various jurisdictions, depending doubtlessly on the phraseology *sui generis* of each statute, it is a fact that pulmonary consumption has not been considered as an occupational disease, unless it is a case similar to that of *Birk* v. *Matson Navigation Co.*, 2 Cal. I.A.C. Dec. 177, which says:

"Where an employee has previously been suffering from tuberculosis of the lungs, which condition had become quiescent, and on the happening of the accident, causing a fractured rib, such tuberculous condition is lighted up, compensation is payable for increased disability due to the recurrence of the tuberculosis."

And there could not be a more logical decision than that in the above case which is in no wise similar to the present case.

Finally we agree with the appellant that constitutional weakness or the pre-existence of certain diseases are no bar to compensation in the case of an accident causing injury to or the death of a workman. Yet the case cited by the appellant in support of that contention does not help the present case, but rather excludes it. The quotation is as follows:

"It is a fundamental principle that the employer takes the employee subject to his physical condition when he enters his employment. Compensation losses are not made solely for the protection of employees in normal physical condition, but for those also who are subnormal, except in exaggerated cases where in consequence of constitutional diseases or disorders, such as tuberculosis or syphilis. an injured workman suffers for a period far beyond what would be

the case if he were in ordinary health, in which cases compensation will be awarded only for the longest period of disability for which a normal person sustaining the same accidental injury would reasonably be disabled. It follows that neither a congenital weakness nor a pre-existing disease will render non-compensable an injury received under conditions which would otherwise make it compensable." 1 Honnold on Workmen Comp., 302–304.

Furthermore, we agree with the appellee that the cases of *Crespo* v. *Workmen's Relief Commission*, 33 P.R.R. 794, and *Rosado* v. *Workmen's Relief Commission*, 35 P.R.R. 902, are not applicable to the present case. Therein the principle is established that there must exist a relation of causality between the accident and the personal injury to or death of the workman to entitle him to the compensation prescribed by law.

For the foregoing reasons the judgment appealed from must be affirmed.

Mr. Justice Hutchison took no part in the decision of this case.